IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CASE NO. 3:20cv511

| | |
|---|---|
| United States of America ) | |
| ) | |
| v. ) | **COMPLAINT FOR** |
| ) | **FORFEITURE *IN REM*** |
| Approximately fifty-five new-in-box Apple ) | |
| iPhones, six new-in-box Apple iPads, one new- ) | |
| in-box Apple watch, and four new-in-box ) | |
| Apple AirPods located by DHL in or about ) | |
| April and May 2019 and voluntarily turned ) | |
| over by DHL to United States Secret Service ) | |
| on or about October 4, 2019, all such items ) | |
| obtained by DHL from a larger DHL shipment ) | |
| from numerous senders, including but not ) | |
| limited to Rami Mhana, with a labeled ) | |
| destination of Union Logistics in Dubai, ) | |
| United Arab Emirates; ) | |
| ) | |
| Approximately fifty-two new-in-box Apple ) | |
| iPhones and approximately $178,582 in United ) | |
| States Currency seized on or about October 9, ) | |
| 2019, pursuant to a federal Search Warrant, ) | |
| from Protocol Business Group, Inc.'s retail ) | |
| location at 441 Bradford Drive, Charlotte, ) | |
| North Carolina; and ) | |
| ) | |
| Approximately $20,536.20 in funds seized on ) | |
| or about October 9, 2019, pursuant to a federal ) | |
| Seizure Warrant, from Fifth Third Bank ) | |
| account XXXXX0126, such account held in ) | |
| the name of Protocol Business Group, Inc. ) | |

NOW COMES the United States of America, Plaintiff herein, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

1

## INTRODUCTION

1. This is a civil action *in rem* pursuant to 18 U.S.C. § 981(a)(1)(A) and (C). Procedures for this action are mandated by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and, to the extent applicable, 18 U.S.C. §§ 981, 983, and 984, and the Federal Rules of Civil Procedure.

2. This action seeks the forfeiture of all right, title, and interest in the above-captioned electronic items, funds, and currency (hereafter, collectively, "the PROPERTIES") because the PROPERTIES constitute or are derived from proceeds of interstate transportation of stolen property in violation of 18 U.S.C. § 2314 and/or property involved in or property traceable to property involved in illegal monetary transactions, money laundering, and/or money laundering conspiracy in violation of 18 U.S.C. §§ 1957, 1956, and 1956(h).

3. This Court has jurisdiction over this action commenced by the United States under 28 U.S.C. § 1345 and over this action for forfeiture under 28 U.S.C. § 1355(a). The Court has *in rem* jurisdiction over the PROPERTIES under 28 U.S.C. § 1355(b).

4. This Court is the proper venue pursuant to 28 U.S.C. §§ 1355 and 1395. In particular, venue is proper because the acts or omissions giving rise to the forfeiture occurred in this district, the claim accrued in this district, and the PROPERTIES were found in this district.

5. The defendant is all present and future interest in the PROPERTIES.

6. In or about October 2019, the United States Secret Service ("Secret Service") seized the PROPERTIES in the Western District of North Carolina as a result of the voluntary relinquishment of some of the Properties by DHL and the execution of federal Search and Seizure Warrants (WDNC Case 3:19MJ357) on some of the Properties. Secret Service, Western District of North Carolina, is currently in possession of the PROPERTIES.

7. Pursuant to Supplemental Rule G(2)(f), facts in support of a reasonable belief that the Government will be able to meet its burden of proof at trial are as follows and have been verified by the attached Verification of Charlotte-Mecklenburg Police Department ("CMPD"), Detective/Secret Service Task Force Officer Matthew Mescan.

## SUMMARY

8. In or about January 2018, CMPD and Secret Service opened an investigation based upon suspicion that Rami Mhana (hereafter, "MHANA") and employees of Protocol Business Group, Inc. (hereafter, "PROTOCOL") purchased new-in-box mobile phones with retail packaging still on the boxes (hereinafter "NEW PHONES") from individuals on the secondary market, knowing the individuals had stolen the NEW PHONES from retail stores or fraudulently obtained the NEW PHONES through identity theft.

9. The investigation revealed that, after PROTOCOL purchased the NEW PHONES at the PROTOCOL storefront, MHANA, operating through PROTOCOL, shipped the NEW PHONES to customers located overseas in United Arab Emirates ("UAE") and Hong Kong, and PROTOCOL and/or MHANA received payments for the shipments.

10. The investigation ultimately led to the voluntary relinquishment of certain NEW PHONES by DHL; the execution of a Search Warrant at the PROTOCOL premises, whereby law enforcement seized the currency identified for forfeiture herein and more NEW PHONES; and the execution of a Seizure Warrant on a PROTOCOL account, whereby law enforcement seized the funds identified for forfeiture herein.

11. More detail about the pertinent individuals and entities involved in the alleged violations, as well as seizure of the PROPERTIES, is set forth below.

3

## INDIVIDUALS, ENTITIES, LOCATIONS, AND VEHICLES

12. At the times relevant herein, the following individuals and entities were engaged in interstate transportation of stolen property and money laundering in the Western District of North Carolina:

    a. PROTOCOL BUSINESS GROUP, INC,: At the times relevant herein, PROTOCOL was an independently-owned mobile telephone store. PROTOCOL was incorporated in North Carolina on or about April 10, 2015, by Rami MHANA. At the time of seizure of some of the PROPERTIES, PROTOCOL maintained a retail location at 441 Bradford Drive, Charlotte, North Carolina (the PREMISES). The PREMISES was a leased storefront in a strip-mall that had regularly been the situs of crime in the Western District of North Carolina and was recently subject to a civil judicial forfeiture action that was ultimately resolved by settlement (WDNC Case 3:16CV786).

    b. WIRELESS CITY FASHION, INC. (hereinafter "WIRELESS CITY FASHION"): WIRELESS CITY FASHION was incorporated in North Carolina in or about August 2, 2017, by Rami MHANA. At the time of seizure of some of the PROPERTIES, WIRELESS CITY FASHION was located at the same address as PROTOCOL.

    c. Rami MHANA: MHANA was a resident of Charlotte, North Carolina. MHANA is a citizen of the Kingdom of Jordan and is a lawful permanent resident of the United States. According to the North Carolina Employment Commission, MHANA's reported annual income for 2018 was from employer, "Wireless City Fashion," in the amount of approximately $45,000.00.

## SURVEILLANCE AND UNDERCOVER SALES AT PROTOCOL

13. From in or about December 2018 to in or about October 2019, law enforcement officers conducted surveillance at the PREMISES.

14. On numerous dates during the surveillance time period, law enforcement observed MHANA and at least one other person open and close PROTOCOL during its regular hours of operation. Also during the surveillance time period, numerous unidentified persons walked into the PREMISES carrying new phones in their hands. The persons remained inside the PREMISES for several minutes, and then the persons exited the PREMISES without the new phones in their hands. These deliveries of new phones generally occurred between about 10:00am and 6:00pm, which were the usual business hours of PROTOCOL. On several occasions, agents observed persons carry new phones inside the PREMISES and then, when they exited, count what appeared to be U.S. currency.

15. In or about February 2019, mobile phone carriers, Verizon, Sprint, T-Mobile, and AT&T, provided law enforcement with approximately nine (9) current-model Apple iPhones (specifically iPhone X, iPhone XSMax, iPhone XR, and iPhone 8 Plus models) (hereafter, "undercover phones") to be used in controlled transactions with PROTOCOL.

16. On or about April 30, 2019, two undercover CMPD law enforcement officers sold undercover phones to a PROTOCOL employee inside the PREMISES in two separate transactions on the same day. In the first transaction on April 30, 2019, one undercover phone with a retail value of approximately $1,449.00 was sold and given to an employee who gave $950.00 in cash to the undercover officers. In the second transaction on this date, two undercover phones with a combined retail value of approximately $1,898.00 were sold to PROTOCOL for $1,400 cash. When the undercover officers entered PROTOCOL to sell the undercover phones to the same

PROTOCOL employee with whom they had previously interacted that day, the employee noted, "you're back!" During the transactions, the PROTOCOL employee showed one of the undercover officers a price list showing the amount PROTOCOL was willing to pay for NEW PHONES brought into the PREMISES. The price list detailed that PROTOCOL was willing to pay between approximately 50% to 65% of retail price for various models of current-model iPhones.

17. A few days later, on or about May 2, 2019, the same two undercover law enforcement officers sold undercover phones in two separate transactions to Rami MHANA and the same PROTOCOL employee with whom they transacted on April 30, 2019, only two days prior, at PROTOCOL. In the first transaction on May 2, 2019, three undercover phones with a retail value totaling approximately $3,997.00 were sold to Rami MHANA, who gave the undercover officers $2,350.00 in cash. In the second transaction on May 2, 2019, three undercover phones with a combined retail value of approximately $2,997.00 were sold to the same employee from the April 30, 2019 transactions, who gave $1,540.00 in cash to the undercover officers.

18. Two undercover law enforcement officers sold a total of nine undercover phones to MHANA and a PROTOCOL employee at the PREMISES on multiple occasions within a three-day period. The undercover phones, which had a combined retail value of approximately $10,141.00, were sold for a total of approximately $6,240.00, or roughly sixty percent (60%) of retail value.

## SHIPMENTS

19. In addition to engaging in transactions with undercover law enforcement that are indicative of the purchase and interstate transportation of stolen property by PROTOCOL, PROTOCOL has shipped one or more packages via DHL that contained NEW PHONES that had been fraudulently obtained.

20. Specifically, according to DHL, an international shipping company, between approximately April 2017 and October 2019, DHL picked-up approximately 105 shipments from the PREMISES. These shipments had a combined weight of approximately two (2) tons and a declared customs value of approximately $14,200,000.00. All but two shipments were addressed to "Union Logistics FZE" or "Union Logistics Hong Kong China LTD" in UAE and Hong Kong. All of the shipments intended for delivery to UAE and/or Hong Kong were described on U.S. Customs forms attached to the shipments as containing "iPhone 7," "iPhone 7 Plus," "iPhones," "MacBook," "iPads," "lithium ion batteries," and various other electronic items.

21. The shipments picked up by DHL at the PREMISES between approximately April 2017 and October 2018 had the sender name of "Wireless City Fashion Inc." on the shipping labels. The shipments picked up by DHL at the PREMISES between approximately October 2018 and October 2019 had the sender name of "Protocol Business Group" on the shipping labels.

22. In late April 2019, PROTOCOL shipped a parcel from the PREMISES. The parcel was intended for delivery to "Union Logistics FZE" in the United Arab Emirates. After being picked up at the PREMISES by a DHL representative, the parcel was placed inside a large shipping container with other customers' parcels, and the large shipping container was shipped to DHL's shipping hub in Ohio. When the large shipping container was opened by a DHL representative in Ohio, it was discovered that the parcel shipped by PROTOCOL had become damaged and opened, and there were approximately one hundred (100) new-in-box iPhones, iPads, and Apple watches (some of the PROPERTIES) throughout the large shipping container. DHL attempted to confirm with MHANA that his parcel contained some of the PROPERTIES. However, MHANA was unable to provide the serial numbers or an adequate description of the PROPERTIES to meet DHL's requirement to prove that the PROPERTIES were, in fact, inside MHANA's parcel during

7

shipment. DHL kept the PROPERTIES, and when DHL discovered that law enforcement was investigating MHANA for interstate transportation of stolen property, DHL relinquished possession of the PROPERTIES to the Secret Service in Charlotte, North Carolina.

23. Law enforcement provided the International Mobile Equipment Identity numbers[1] ("IMEIs") of all of the devices provided by DHL to representatives of Verizon, Sprint, T-Mobile, and AT&T, who confirmed that all but about fifteen percent (15%) of the devices had, in fact, been obtained through identity theft or larceny.

24. On or about May 7, 2019, DHL informed law enforcement that two cardboard boxes (hereinafter, collectively, "packages") were picked-up by DHL from the PREMISES on May 6, 2019, to be shipped to the United Arab Emirates.

25. Later, on May 7, 2019, pursuant to a federal Search Warrant, law enforcement searched the packages at a DHL distribution center in Charlotte, North Carolina. Approximately 192 new phones and other new-in-box electronics goods were inside the packages. Photographs of the new phones and other new-in-box electronics goods were taken by law enforcement officers, and the contents were repackaged inside the packages which were re-sealed and sent via DHL to the packages' intended destination. Approximately half of the new phones which were inside the packages bore sticky notes with hand-written names and abbreviated names of telecommunications companies such as Verizon and Sprint. The approximate retail value of the new phones was $190,000.00. However, the U.S. Customs form, completed by the sender (i.e., PROTOCOL), accompanying the packages claimed a value of only $80,000.00, which is less than half the true

---

[1] IMEI numbers may be used by a mobile telecommunication carrier, such as Verizon, Sprint, AT&T, or T-Mobile, to determine, among other information, when and where a mobile device was obtained, and whether it was activated on a carrier's network.

approximate value of the contents.

26. During the search of the packages, law enforcement officers documented, among other information, the IMEI numbers of the inventoried new phones. Following execution of the Search Warrant on the packages, representatives of Verizon, Sprint, AT&T, and T-Mobile were provided with the IMEIs of the new phones found in the packages. Based on the IMEI numbers, these carriers confirmed that, of the 192 new phones contained in the packages, approximately 54 new phones had been written-off as having been stolen or fraudulently obtained just days before the packages were shipped by PROTOCOL. Of the remaining approximately 138 new phones, Verizon, AT&T, Sprint, and T-Mobile had no record of the IMEI, suggesting they were devices associated with one or more other unidentified authorized retailer/s of mobile phones.

27. Thus, PROTOCOL shipped at least approximately two tons of packages to UAE containing mobile phones and other electronic devices via DHL. One of the cardboard boxes broke apart during transit, and the devices that were inside the cardboard boxes were relinquished to the Secret Service. Telecommunications company representatives have thus far confirmed that almost all of the devices were obtained through identity theft or larceny. *These devices include the fifty-five new-in-box Apple iPhones, six new-in-box Apple iPads, one new-in-box Apple watch, and four new-in-box Apple AirPods described in the caption of this Complaint.*

## FINANCIAL ACCOUNT

28. In addition to engaging in transactions with undercover law enforcement and shipping NEW PHONES via DHL, PROTOCOL and MHANA have also used the PROTOCOL account to transact in proceeds of interstate transportation of stolen property.

29. Specifically, on or about February 10, 2017, Rami MHANA opened a bank account at a Fifth Third Bank branch ("SUBJECT ACCOUNT").

9

30. Between approximately October 2018 and July 2019, there were numerous wire deposits, totaling approximately $2,400,000.00, from the Abu Dhabi Islamic Bank account of customer "Union Logistics FZE" in UAE to the SUBJECT ACCOUNT. Union Logistics was an entity to which PROTOCOL shipped new phones. The wire deposits from "Union Logistics FZE" were in amounts ranging from approximately $37,000.00 to $267,000.00 each. Each deposit had an accompanying memo of "payment for mobile phones," which indicates that each deposit represented payment for mobile phones purchased from PROTOCOL.

31. Between approximately March 2019 and October 2019, someone with access to the SUBJECT ACCOUNT withdrew approximately $650,000.00 in United States Currency. Based on the pattern of activity in the SUBJECT ACCOUNT and at the PROTOCOL storefront on the PREMISES, these funds were used by Rami MHANA to purchase new-in-box phones from persons selling phones to PROTOCOL throughout this time period. Specifically, in addition to the information set forth herein, all of the persons interviewed by law enforcement stated that they were paid in cash when they sold phones to MHANA or an employee of PROTOCOL.

32. During roughly 2018 through at least September 2019, the SUBJECT ACCOUNT generally had a fluctuating daily balance of between approximately $1,500.00 and $150,000.00, such balance dependent on the bank wire deposits into the SUBJECT ACCOUNT from "Union Logistics FZE."

33. The shipping records from DHL for packages shipped by PROTOCOL to "Union Logistics FZE" correspond to deposits into the SUBJECT ACCOUNT made by "Union Logistics FZE" for the shipments.

34. For example, below is a table that details shipments made in April and May 2019 by PROTOCOL to "Union Logistics FZE" in UAE and related bank wire deposits into the

10

SUBJECT ACCOUNT.

| DATE | SHIPMENT ACTIVITY | DEPOSIT ACTIVITY |
|---|---|---|
| 4/2/19 | DHL shipment to "Union Logistics FZE" in UAE | |
| 4/9/19 | | $66,318.00 deposited by "Union Logistics FZE" into SUBJECT ACCOUNT |
| 4/15/19 | DHL shipment to "Union Logistics FZE" in UAE | |
| 4/22/19 | | $116,347.00 deposited by "Union Logistics FZE" into SUBJECT ACCOUNT |
| 4/22/19 | DHL shipment to "Union Logistics FZE" in UAE | |
| 4/29/19 | DHL shipment to "Union Logistics FZE" in UAE | $37,118.00 deposited by "Union Logistics FZE" into SUBJECT ACCOUNT |
| 5/6/19 | DHL shipment to "Union Logistics FZE" in UAE | |
| 5/14/19 | | $39,960.00 deposited by "Union Logistics FZE" into SUBJECT ACCOUNT |
| 5/16/19 | | $267,950.00 deposited by "Union Logistics FZE" into SUBJECT ACCOUNT |
| 5/23/19 | DHL Shipment to "Union Logistics FZE" in UAE | |
| 6/10/19 | | $64,955.00 deposited by "Union Logistics FZE" into SUBJECT ACCOUNT |

35. The above-referenced financial activity is indicative of an account—the SUBJECT ACCOUNT—that is used to receive large transactions in crime proceeds from entities that sell stolen property overseas, and also used to fund cash withdrawals whereby one or more individuals engaged in the purchase of stolen property use cash to maintain their PROTOCOL storefront and purchase stolen property from customers.

# EXECUTION OF FEDERAL
# SEARCH WARRANT AND SEIZURE WARRANT

36. On or about October 8, 2019, a Federal Magistrate Judge issued a Search and Seizure Warrant for the PREMISES and a forfeiture Seizure Warrant for the funds in the SUBJECT ACCOUNT.

37. Upon execution of the Search and Seizure Warrant on October 9, 2019, law enforcement seized evidence, as well as some of the PROPERTIES identified for forfeiture herein. Specifically, law enforcement seized fifty-two new-in-box Apple iPhones and approximately $178,582 in United States Currency. The iPhones were found in Rami MHANA's office, located at the rear of the PREMISES, and a storage room connected to MHANA's office. Some of the United States Currency was located in cash registers at the front of the store; however, the bulk of the United States Currency was located in a safe in MHANA's office. Telecommunications company representatives confirmed that the fifty-two new-in-box iPhones were, in fact, obtained through identity theft or larceny. These items are described in the second paragraphortion of the caption of this Complaint.

38. Upon execution of the Seizure Warrant for the funds in the SUBJECT ACCOUNT, law enforcement seized approximately $20,536.20 in funds.

39. Between approximately October 2019 and March 2020, law enforcement conducted a forensic examination of office computers seized from PROTOCOL. This examination captured electronic invoices and spreadsheets which contained IMEIs of phones that were destined for addresses outside the State of North Carolina. There were also paper invoices that contained IMEIs of phones that were destined for addresses outside the State of North Carolina. Most of these paper and electronic invoices were accompanied by DHL shipping labels that were addressed from PROTOCOL to "United Logistics FZE" in UAE. There were

approximately 1,500 different IMEIs contained in the electronic and paper invoices.

40. Between approximately March 2020 and August 2020, law enforcement provided the IMEIs to representatives of Verizon, Sprint, T-Mobile, and AT&T who confirmed that no less than approximately half of these devices were, in fact, obtained through identity theft or larceny from the phone carriers' retail stores. Approximately fifteen percent (15%) of these devices were pre-paid phones, and only about two percent (2%) of these devices had not been reported as having been purchased through identity theft or larceny. The remaining devices are suspected to have been sold by an unidentified authorized retail store.

41. The legitimate retail price for iPhones at authorized retail stores is, pursuant to agreements with Apple, the same at every authorized retail store in the United States. However, a forensic examination of the computers used in the course of business by PROTOCOL—computers that law enforcement seized pursuant to execution of the Search Warrant—revealed that the computers contained "price lists" that listed various iPhone models and unexplainably low prices at which PROTOCOL was willing to purchase these iPhones from customers. These price lists indicated that PROTOCOL paid between approximately forty-eight percent (48%) and approximately sixty-two (62%) of retail price to sellers of current-model iPhones who entered the PROTOCOL storefront. Based on these price lists, had the PROTOCOL customers who sold phones to PROTOCOL legitimately purchased at full retail price the new-in-box phones that they sold to PROTOCOL for 48-62% of full retail price, the customers would have lost between $300 and $600 per phone sold to PROTOCOL.

42. These price lists and the other information set forth herein reflect that PROTOCOL's business model was a success, and generated the currency and funds identified for forfeiture herein, entirely or almost entirely as a result of interstate transportation of stolen

13

property and money laundering, and not as a result of a revenue-generating legitimate business.

## CONCLUSION

43. By virtue of the foregoing and pursuant to 18 U.S.C. § 981(f), all right, title, and interest in the Properties vested in the United States at the time of the commission of the unlawful acts giving rise to forfeiture and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

2. Judgment be entered declaring the Properties to be condemned and forfeited to the United States of America for disposition according to law; and

3. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Properties as required by 28 U.S.C. § 1921.

Respectfully submitted, this the 16th day of September, 2020.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

**s/Benjamin Bain-Creed**
FL Bar Number 21436
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Facsimile: (704) 344-6629
Email: benjamin.bain-creed@usdoj.gov

STATE OF North Carolina
COUNTY OF Mecklenburg

## VERIFICATION

Matthew Mescan deposes and says under penalty of perjury:

I am a Task Force Officer with the United States Secret Service and one of the officers assigned to this case.

I have read the foregoing Complaint and the factual information contained therein is true according to the best of my knowledge, information, and belief.

_____
USSS TFO/CMPD Detective Matthew Mescan


STATE OF North Carolina
COUNTY OF Mecklenburg

I certify that Matthew Mescan personally appeared before me this day, acknowledging to me that he signed the foregoing document.

This the 15 day of September, 2020.

_____
Notary Public
My Commission Expires: 9-18-2023

15
Case 3:20-cv-00511   Document 1   Filed 09/16/20   Page 15 of 15